# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

_____
INTELLIVISION, a joint venture, and           )
PAUL HOFFMAN,                                 )
                                              )
                            Plaintiffs,       )
                                              )   INDEX NO.
             v.                               )
                                              )
MICROSOFT CORPORATION,                        )
                                              )
                            Defendant.        )
_____)

TO THE ABOVE-NAMED DEFENDANT(S):

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney within twenty (20) days after service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
       January 2, 2013

                                              BRUCE D. KATZ, ESQ.
                                              *Attorneys for Plaintiffs*
                                              *Office & Post Office Address:*
                                              160 Broadway, Suite 908
                                              New York, New York 10038
                                              (212) 233-3434

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| INTELLIVISION, a joint venture, and PAUL HOFFMAN,<br><br>       Plaintiffs,<br><br>   v.<br><br>MICROSOFT CORPORATION,<br><br>       Defendant. | **COMPLAINT**<br><br>INDEX NO. |

As and for their Complaint herein, Plaintiffs, Intellivision and Paul Hoffman, through their undersigned attorney, allege as follows:

1. Plaintiff, Intellivision, at all relevant times herein, was an unincorporated joint venture formed in New York in 1999 and consisting of three individuals, or principals, including John Daniels ("Daniels"), Bruce Adams ("Adams"), and Plaintiff, Paul Hoffman ("Hoffman"). From 1999 through 2001, Intellivision maintained offices in New York City and/or Connecticut.

2. At all relevant times herein, Plaintiff, Paul Hoffman, has been a resident of the State and County of New York.

3. On information and belief, defendant Microsoft Corporation ("Microsoft") is a corporation organized and existing under the laws of the state of Washington and having a principal place of business at One Microsoft Way, Redmond, Washington 98052.

4. On information and belief, Defendant, Microsoft, has offices in the state of New York, is qualified and licensed to do business in the state of New York, does business in the State of New York, contracts to supply goods and services within the state and city of New York, regularly does and solicits business in the state and city of New York, engages in persistent sales

of goods and services and solicitation therefor, and derives substantial revenue from goods used or consumed or services rendered in the state and city of New York, and owns and possesses real property situated within the state of New York.

5. Intellivision was formed by Daniels, Adams and Hoffman in 1999 for the purpose of creating, developing, patenting, commercializing and/or licensing interactive television and related technologies.

6. Before and after forming Intellivision, Daniels, Adams and Hoffman were engaged in the commercial development and exploitation of pioneering advancements in interactive television technology, including the Digital Video Recorder ("DVR").

7. Technology developed by Daniels, Adams and Hoffman is of enormous commercial value and has been exploited by Microsoft and others to the detriment of the Plaintiffs herein.

8. The foregoing technology was developed at a tremendous personal and professional cost and sacrifice to Daniels and Hoffman and required years of exhaustive work performed under adverse working conditions.

9. The foregoing technology has been incorporated into commercially successful consumer electronics products, including the DVR; and is disclosed in numerous patents prepared, filed and prosecuted by Daniels, Adams and/or Hoffman.

10. In 2000, Microsoft representatives expressed interest in Plaintiffs' technology and invited Daniels and Hoffman to visit Microsoft's Web TV campus in Mountain View, California for that purpose. In response to questioning by Daniels and Hoffman, Microsoft executives, including Anthony Faustini, explicitly stated Microsoft had not developed, was not engaged in

the development of, and had no plans to release a television set-top box product or related software that incorporates the foregoing technology (namely, a DVR).

11. During the aforementioned visit to Microsoft, Mr. Faustini explained to Daniels and Hoffman that Microsoft had an interest in purchasing their intellectual property portfolio for "defensive" purposes. As explained by Microsoft representatives, Microsoft had not theretofore dedicated substantial efforts to the protection of its Web TV intellectual property and had been increasingly facing infringement claims by consumer electronics manufacturers. It was explained to Daniels and Hoffman that Microsoft's interest in their intellectual property portfolio was based on Microsoft's desire to build a portfolio of valuable patents to utilize for defensive purposes when challenged by others asserting claims of patent infringement.

12. Shortly thereafter, Microsoft in-house attorney Ronald Zink communicated with Daniels, Adams and Hoffman and made a verbal offer to purchase Plaintiffs' intellectual property and related technology.

13. After discussing Microsoft's offer, Plaintiffs rejected Mr. Zink's offer and made a counteroffer seeking an additional up-front cash payment and an ongoing royalty on any products that are within the scope of any patent applications that would issue to Plaintiffs.

14. In response to Plaintiffs' counteroffer, Mr. Zink advised Daniels, Adams and Hoffman in discussions that took place in the fall of 2000 that a royalty payment would be unworkable. Mr. Zink explained that none of Plaintiffs' patent applications had yet issued as patents, thus making it difficult (but not impossible) to determine the amount of a royalty, the patent claims which would trigger royalty payments, and what (if any) products would require

payment of a royalty. Mr. Zink advised Daniels, Adams and Hoffman that Microsoft needed to be able to determine, at the outset, the cost of the acquisition of their technology. According to Mr. Zink, Microsoft could not determine at that point the cost of a per-unit royalty payment over the lifetime of a certain product based on the fact that none of the patent applications had yet matured into issued patents and, because no such products had been developed or were under current development.

15. Plaintiffs advised Mr. Zink that it was neither difficult nor unworkable to determine a royalty, and that Plaintiffs would insist on payment of a royalty in the event Microsoft then planned on introducing any products falling within the scope of its patent applications.

16. In response, Mr. Zink reaffirmed the representations earlier made by Microsoft in 2000 by assuring Intellivision representatives in the fall of 2000, and again in January 2001, that Microsoft had not developed, was not developing at the time, and did not presently intend to develop or introduce a product having DVR functionality. Mr. Zink specifically assured Daniels, Adams and Hoffman that Microsoft had no present intent of offering a product with "Tivo-like" functionality. These verbal representations were made by Mr. Zink during discussions that occurred in the fall of 2000 and in January 2001.

17. As further inducement, Microsoft representatives, including Antony Faustini, assured Daniels and Hoffman that Microsoft would maintain ongoing business relationships with them in connection with their continued developments in interactive television technology. Although Adams had no interest in maintaining an ongoing relationship with Microsoft in the development of interactive TV technology, Microsoft's offer to maintain such a relationship with

-4-

Daniels and Hoffman was a substantial inducement to Daniels and Hoffman.

18.   In furtherance of his ongoing relationship with Microsoft, Daniels entered into a two-year consulting agreement with Microsoft by which Daniels' developments relating to the assigned technology would be owned by Microsoft. However, Hoffman refrained from entering into such an agreement with Microsoft for the sole purpose of enabling him to retain ownership of his joint with Daniels that would be developed on behalf of Microsoft.

19.   In reliance on the representations and assurances made by Microsoft in 2000 and 2001, Daniels, Adams and Hoffman were reasonably led to believe and reasonably did believe that Microsoft had not already developed, was not in the process of developing, and had no present intention of developing or introducing a product having DVR functionality. Stated otherwise, Daniels, Adams and Hoffman were reasonably led to believe and reasonably did believe that Microsoft had lost interest in the DVR market and/or abandoned any plans it had to enter the DVR market.

20.   Daniels, Adams and Hoffman did not simply accept Microsoft at its word and conducted independent online searches for the purpose of verifying Microsoft's representations. These searches did not uncover any information that conflicted with Microsoft's representations.

21.   In reliance on Microsoft's representations that it was not entering the DVR market, Daniels, Adams and Hoffman were reasonably led to believe that their technology was worth less than they otherwise believed. Thus, Daniels, Adams and Hoffman agreed to forego their demand for a per-unit royalty based on sales of products and agreed to a substantially reduced up-front payment and a modest contingent payment.

22.   On or about January 19, 2001, Plaintiffs entered in to a confidential written

Agreement with Microsoft by which Microsoft agreed to acquire Plaintiffs' novel technology. A copy of the parties' Agreement is attached hereto as **Exhibit A.** Under the parties' Agreement, Microsoft agreed to an up-front payment of $1,000,000 and a contingent payment of $850,000 upon allowance of a patent claim having the language specified in Attachment C to the parties' Agreement.

23. Specifically, the parties agreed that Microsoft would make three payments of differing amounts to each of Daniels, Adams and Hoffman, it being understood by Microsoft, Daniels, Adams and Hoffman that "Intellivision" was merely a fictitious name by which Daniels, Adams and Hoffman identified themselves, and that "Intellivision" had no bank account and was not entitled to payment under the parties' Agreement; but that all payments were to be made individually to Daniels, Adams and Hoffman.

24. Microsoft's representations that it had not developed a DVR were also material to the language of Attachment C of the parties' Agreement. In negotiating the claim language contained in Attachment C of the parties' Agreement, the parties mutually agreed that such claim language should be broad enough to encompass a novel aspect of the DVR, but narrow enough to be deemed allowable. However, since Daniels, Adams and Hoffman were then unfamiliar with the architecture of commercially-available DVRs, and since Microsoft falsely represented that it also lacked such familiarity, Plaintiffs were misled into agreeing to overly-broad language reciting a method of "pausing" live TV. However, Adams, Daniels and Hoffman later learned that Microsoft was fully aware of DVR-enabling architecture and simply concealed it from Daniels, Adams and Hoffman.

25. As a further inducement to Daniels, Adams and Hoffman, Microsoft also agreed

that Daniels, Adams and Hoffman could continue to prosecute the patent applications assigned to Microsoft for their usual fee. However, after execution of the parties' Agreement, Microsoft unilaterally rescinded this agreement and transferred prosecution of the patent applications to others.

26. One day before formal execution of the parties' Agreement by Plaintiffs, Mr. Zink reaffirmed his previous representations. This was an important consideration to Plaintiffs and induced Plaintiffs to forego royalty payments and to execute an Agreement with a reduced up-front payment. If Plaintiffs knew that Microsoft was planning to introduce a DVR, they would not have executed the parties' Agreement.

27. Despite Microsoft's repeated representations to the contrary, and on information and belief, approximately one week after the parties' Agreement was fully executed, Microsoft launched a national advertising campaign for its "Ultimate TV" DVR. Also, on information and belief, at the same time Microsoft made repeated representations to the contrary, Microsoft was also developing and/or had already developed a software-based DVR for incorporation into its PC operating system and software for incorporation into Cable/Satellite TV head-end equipment and subscriber set-top boxes.

28. Stated otherwise, on information and belief, approximately one week after Plaintiffs entered into an agreement assigning to Microsoft their intellectual property rights to the DVR for a reduced payment and no per-unit royalty, Microsoft introduced a DVR – despite representing to Plaintiffs that it had no intention of doing so.

29. Microsoft also unilaterally transferred prosecution of the assigned patent applications to other firms, thereby depriving Daniels, Adams and Hoffman of the ability to earn

anticipated fees for performing such services.

30.     Thus, Microsoft misrepresented critical facts that were material to the parties' Agreement, as to its development activities and intentions, and thereby fraudulently induced Plaintiffs into executing the parties' Agreement under terms that were materially worse than Plaintiffs would have agreed to if Microsoft had truthfully represented the facts.

31.     Although Daniels, Adams and Hoffman complained to Microsoft attorneys about Microsoft's misrepresentations and contemplated rescission and/or reformation of the parties' Agreement to incorporate a royalty, they were led to believe that they would be better off financially they awaited allowance by the Patent Office of the patent claim set forth in Attachment C of the parties' Agreement and collected the outstanding $850,000 payment by Microsoft required by the parties' Agreement upon allowance of such claim.

32.     More specifically, although Microsoft made initial payments to Daniels, Adams and Hoffman under Paragraph 3(A) of the parties' Agreement in 2001, Paragraph 3(B) set forth a second payment requirement of $850,000 (approximately 45% of the full contract price) that would be triggered upon allowance by the Patent Office of a claim having the language set forth in Attachment C

33.     For the purpose of convincing Daniels, Adams and Hoffman to refrain from suing for rescission and/or damages based on Microsoft's fraudulent misrepresentations, Microsoft and its attorneys lulled Daniels, Adams and Hoffman into inaction by pointing out that its Ultimate TV DVR had been discontinued and was a tremendous financial loss to Microsoft.

34.     However, at the same time Microsoft and its attorneys made the foregoing representations to Daniels, Adams and Hoffman, it also concealed from them the fact that it had

-8-

already developed and/or was in the process of developing a software version of its Ultimate TV product that would be incorporated into its Windows® Operating System and Cable/Satellite TV head-end equipment and subscriber set-top boxes. Microsoft knew that such developments were a material consideration to Daniels, Adams and Hoffman and nonetheless concealed it from them.

35.  Additionally, Microsoft misrepresented facts concerning prosecution of the patent claim containing the language set forth in Attachment C of the parties' Agreement. Microsoft and its attorneys repeatedly assured Daniels, Adams and Hoffman that the Examiner in charge of the patent application indicated that he intended to allow the claim and simply required additional information in order to do so.

36.  For instance, on one occasion, Microsoft advised Daniels, Adams and Hoffman that the Examiner merely required a supplemental affidavit stating that the acts constituting Daniels's reduction to practice of the claimed invention occurred in the United States. Since the Patent Examiner was precluded from speaking directly to Daniels, Adams and Hoffman concerning the patent applications it had assigned to Microsoft, Daniels, Adams and Hoffman could not independently verify Microsoft's representations.

37.  In an effort to mitigate their damages, Daniels, Adams and Hoffman refrained from earlier suing Microsoft for rescission and/or damages. The decision to refrain from earlier filing this lawsuit was based exclusively on (a) Microsoft's reassurances that the Examiner indicated that the claim under Attachment C would be allowed, and (b) Microsoft's representation that its Ultimate TV DVR was discontinued and concealment of Microsoft's further DVR developments.

38. Microsoft's assurances were all false and were made for the purpose of convincing Daniels, Adams and Hoffman not to sue Microsoft. On information and belief, the Examiner did not indicate that he would allow the claim of Attachment C.

39. Daniels, Adams and Hoffman were misled by Microsoft's misrepresentations concerning allowance of the claim of Attachment C and by Microsoft's fraudulent concealment of its development efforts. Thus, Daniels, Adams and Hoffman did not earlier file a lawsuit against Microsoft seeking rescission and/or damages.

## COUNT I
## BREACH OF CONTRACT – AS TO INTELLIVISION AND HOFFMAN

40. Plaintiffs repeat and reallege all of the statements set forth in Paragraphs 1-39 above as if more fully set forth herein.

41. Microsoft had an obligation to diligently prosecute the assigned patent applications to obtain allowance of a claim that would trigger its payment obligation under Attachment C of the parties' Agreement and had a further obligation to provide Plaintiffs with accurate and correct information concerning the prosecution of the assigned applications.

42. On information and belief, Microsoft breached the foregoing obligations by, *inter alia*:

(1) Failing to diligently prosecute the assigned patent applications to obtain allowance of a claim that would trigger Microsoft's payment obligation under Attachment C;

(2) Failing to provide Plaintiffs with copies of documents sent to and received from the Patent Office concerning prosecution of the assigned patent applications;

(3) Acts of misrepresentation and concealment occurring throughout 2002 –

-10-

2006, including, (a) misrepresentations made by Microsoft attorneys from 2002 through 2005 that a claim having the language contained in Attachment C would be allowed; (b) concealment of Patent Office communications revealing that the Patent Office had no intention of allowing a claim having the language of Attachment C, including concealment of Microsoft's July 2006 loss of a Patent Office appeal as to such claim; (c) unilaterally deciding to abandon prosecution of the claim recited in Attachment C of the parties' Agreement or a claim of substantially the same scope; and (d) unilaterally deciding that it would not pay the $850,000 required by the parties' Agreement even if the Patent Office allows the claim recited in Attachment C or a claim of substantially the same scope;

(4)    Microsoft's concealment of its DVR developments, which could have led to allowance of claims that would have triggered Microsoft's payment obligations under Attachment C; and

(5)    Microsoft's preparation, filing and diligent prosecution of patent applications based on technologies it acquired from Plaintiffs and falsely naming Microsoft employees as sole inventors, in lieu of diligent prosecution of the assigned patent applications, for the purpose of destroying the value of the assigned patent applications in the event of a lawsuit by Plaintiffs.

43.    Plaintiffs have been damaged by Microsoft's breach of its obligations in that Plaintiffs were unable to obtain payment under Attachment C to the parties' Agreement.

44.    By virtue of the aforementioned misrepresentations made by Microsoft in January 2001 concerning prosecution of the assigned patent applications by Plaintiffs, Plaintiffs were fraudulently-induced to execute the parties' Agreement with an unenforceable forum-selection clause requiring contractual disputes to be brought in courts within Washington State.

45.    Plaintiffs were fraudulently induced to agree to this forum selection clause based on Microsoft's misrepresentation in January 2001 that Plaintiffs would have the right to continue to prosecute the assigned patent applications.

46.    Namely, Microsoft falsely assured Plaintiffs that they would have the right to continue to prosecute the assigned patent applications. Thus, Plaintiffs were falsely and

reasonably led to believe by Microsoft that they had no potential claims against Microsoft, and thus agreed to the forum selection clause.

47. More specifically, the parties' Agreement was a purchase agreement by which Microsoft was acquiring technology. By its terms, the parties' Agreement created no ongoing duties on the part of Microsoft other than payment. Since Plaintiffs were falsely led to believe that they had the continued right to prosecute the patent applications that would trigger Microsoft's payment obligations, they believed that they had no potential claims against Microsoft and were therefore fraudulently induced to execute the parties' Agreement with the above-mentioned forum selection clause.

48. Plaintiffs would not have agreed to the forum selection clause absent Microsoft's assurances that Plaintiffs would have the continued right to prosecute the assigned patent applications.

## COUNT II
## ANTICIPATORY REPUDIATION – AS TO INTELLIVISION AND HOFFMAN

49. Plaintiffs repeat and reallege all of the statements set forth in Paragraphs 1-48 above as if more fully set forth herein.

50. Upon unilaterally rescinding Plaintiffs' right to prosecute the assigned patent applications, Microsoft was obligated to prosecute the assigned patent applications to obtain allowance of a claim having the language contained in Attachment C of the parties' Agreement, or a claim of substantially the same scope, and was under a further duty to provide Plaintiffs with accurate and correct information concerning the prosecution of the assigned applications.

51. By deciding to abandon its efforts to pursue allowance of the claim set forth in

Attachment C of the parties' Agreement and deciding that it would not pay the $850,000 required by Paragraph 3(B) of the parties' Agreement, Microsoft has anticipatorily repudiated its obligations under the parties' Agreement.

## COUNT III
## UNJUST ENRICHMENT – AS TO HOFFMAN

52.  Plaintiffs repeat and reallege all of the statements set forth in Paragraphs 1-51 above as if more fully set forth herein.

53.  The specific acts of Microsoft alleged above, including Microsoft's misrepresentations of material facts in 2000 and up to and including January 2001, that Microsoft had not developed, was not developing, and had no present intention of developing a DVR, were fraudulent misrepresentations and/or acts of fraudulent concealment intended to induce Hoffman into signing the parties' Agreement under terms that were significantly less advantageous than they would have been had Microsoft not misrepresented material facts and/or concealed material facts from Hoffman.

54.  Hoffman (along with Daniels and Adams) reasonably relied upon the aforementioned misrepresentations made by Microsoft in 2000 and up to and including January 2001, and was thereby induced to execute the parties' Agreement under terms that were significantly less advantageous than he would have been had Microsoft not misrepresented the facts. Hoffman was independently damaged in that he (rather than Intellivision) was entitled to payment under the parties' Agreement.

55.  On information and belief, the aforementioned acts of misrepresentation and concealment by Microsoft were done with knowledge of their falsity and for the purpose of

-13-

causing damage to Plaintiffs.

56. Hoffman has been damaged by Microsoft's acts of misrepresentation and concealment by a loss of revenue in the form of royalties, lost opportunities with third parties, lost income from prosecuting the patent applications, lost opportunity in expediting the examination of the patent applications and enforcing those patent rights against others, and lost opportunity in exploiting DVR-related developments.

57. For instance, in reliance on the aforementioned misrepresentations made by Microsoft, Hoffman (along with Daniels and Adams) executed the parties' Agreement assigning all the parties' jointly owned intellectual property rights to Microsoft and terminated discussions with various third parties, including General Instrument, Replay TV, Tivo, and Gemstar, all to his financial detriment.

58. By virtue of the foregoing misrepresentations, the parties' Agreement was fraudulently induced and invalid.

59. Microsoft was unjustly enriched by having fraudulently acquired title to Plaintiff's technology and intellectual property, which enabled Microsoft to exploit that technology and intellectual property in connection with its DVR-related developments and licensing activities.

60. Microsoft was unjustly enriched at Plaintiff's expense.

61. It is against equity and good conscience to allow Microsoft to retain the benefit of its unjust enrichment at Plaintiff's expense.

## COUNT IV
## PROMISSORY ESTOPPEL – AS TO HOFFMAN

62. Plaintiffs repeat and reallege all of the statements set forth in Paragraphs 1-61

above as if more fully set forth herein.

63. Microsoft's aforesaid promises and assurances were all clear and unambiguous, and were false.

64. Plaintiff relied on the aforesaid promises and assurances, and such reliance was both reasonable and foreseeable.

65. Plaintiff was injured by such reliance.

**WHEREFORE**, Plaintiffs pray for an Order as follows:

1. Finding that Plaintiffs were fraudulently induced by Microsoft to execute the parties' Agreement and/or that the parties Agreement is invalid as a result of fraud, negligent misrepresentation, innocent misrepresentation, mutual and/or unilateral mistake;

2. Finding that Microsoft has been unjustly enriched;

3. Finding that Microsoft's breach of its promise that it had no intent to introduce a DVR estops it from denying that Plaintiff is entitled to royalties and/or an increased payment;

4. Finding that Microsoft has breached its obligations under the parties' Agreement;

5. Finding that Microsoft has anticipatorily repudiated its obligations;

6. Awarding Plaintiffs their damages, including an Order for all compensatory damages, consequential, incidental and punitive damages, together with interest, reasonable attorney's fees, costs and disbursements of this action as permitted by law; and

7. Such other and further relief as to this Court seems just and proper.

Respectfully submitted,

Dated: January 2, 2013

/s/
By: Bruce D. Katz, Esq.
    Bruce D. Katz & Associates
    160 Broadway – Suite 908
    New York, NY 10038
    (212)233-3434

    *Attorney for Plaintiffs*
    *Intellivision and Paul Hoffman*